IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

THERESA A. GRAYBEAL,
        Plaintiff,

                                    3:10-cv-06387-PK

                                    FINDINGS AND
                                    RECOMMENDATION

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,
        Defendant.
_____

PAPAK, Magistrate Judge:

      Plaintiff Theresa Graybeal challenges the Commissioner's decision denying her

application for disability insurance benefits under Title II and supplemental security income

under Title XVI of the Social Security Act.  Graybeal asks the court to reverse the

Commissioner's decision and remand for an award of benefits or for further proceedings.  The

court has jurisdiction under 42 U.S.C. § 405(g).  For the reasons set forth below, this court

should reverse the Commissioner's decision and remand for further proceedings.

Page 1- FINDINGS AND RECOMMENDATION

## BACKGROUND

Graybeal filed applications for disability benefits and supplemental security income on June 26, 2007, alleging disability beginning April 10, 2007 due to arthritis, depression, anxiety, a learning disability, a sleeping disorder, migraine headaches, carpal tunnel syndrome, and diarrhea. Tr. 8, 97-102, 125. After the Commissioner denied her application initially and upon reconsideration, Graybeal requested a hearing before an administrative law judge (ALJ). Tr. 62, 68, 72. The ALJ held a hearing in April 2010, where Graybeal appeared without representation. Tr. 29-57. The ALJ took testimony from Graybeal, her friend Mary Wehling, and a vocational expert. *Id.* In July 2010, the ALJ issued a decision finding Graybeal not disabled because she could perform the requirements of past relevant work as a meat packager and other representative occupations such as housekeeper, janitor, and small products assembler. Tr. 14-15.

The ALJ applied the five-step sequential disability determination process set forth in 20 C.F.R. §§ 404.1520 and 416.920. Tr. 8-15. At step one, the ALJ found that Graybeal had not engaged in substantial gainful activity during the period from her alleged onset date of April 10, 2007 through the date of the hearing. Tr. 10. At step two, the ALJ found that Graybeal had the following severe combination of impairments: "borderline intellectual functioning; affective disorder; generalized anxiety disorder; degenerative joint disease; headaches; morbid obesity." *Id.* At step three, the ALJ found that Graybeal's impairments, or a combination of those impairments, did not meet or medically equal a listed impairment. Tr. 10-11. The ALJ found that Graybeal had the residual functional capacity to perform the full range of medium work with several non-exertional limitations. Tr. 11. Specifically, the AJL found that Graybeal was limited to simple, routine, unskilled tasks that do no require detailed instructions, was precluded from

working with the general public, but was permitted work in close proximity with others. Tr. 11-
13. At step four, the ALJ found that Graybeal was capable of performing her past relevant work
as a meat packager. Tr. 13. The ALJ also concluded at step five that Graybeal could perform
jobs that exist in significant numbers in the national economy, and accordingly found her not
disabled. Tr. 14-15.

The Appeals Council denied review of the ALJ's decision, making the ALJ's decision the
Commissioner's final decision. Tr. 1-3. Graybeal then initiated this action.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on proper legal
standards and the findings are supported by substantial evidence in the record as a whole. 42
U.S.C. § 405(g); *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009).
"Substantial evidence means more than a mere scintilla but less than a preponderance; it is such
relevant evidence as a reasonable mind might accept as adequate to support a conclusion."
*Vasquez v. Astrue*, 547 F.3d 1101, 1104 (9th Cir. 2008) (citation omitted). The court must weigh
all of the evidence, whether it supports or detracts from the Commissioner's decision. *Martinez
v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). If evidence supports more than one rational
interpretation, the court upholds the Commissioner's decision. *Tommasetti v. Astrue*, 533 F.3d
1035, 1038 (9th Cir. 2008). A reviewing court, however, "cannot affirm the decision of an
agency on a ground that the agency did not invoke in making its decision." *Stout v. Comm'r Soc.
Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (citation omitted). "Finally, the court will not
reverse an ALJ's decision for harmless error, which exists when it is clear from the record that
the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti,*

533 F.3d at 1038 (citation omitted).

## DISCUSSION

Graybeal contends the ALJ erred in several respects. First, Graybeal argues that the ALJ improperly rejected examining psychologist Dr. Daniel's opinion that Graybeal is impaired in her ability to focus attention to complete assigned tasks in a competitive work environment. Thus, Graybeal posits that the ALJ improperly formulated her Residual Functional Capacity ("RFC") by omitting that limitation and instead restricting Graybeal to simple, routine, unskilled tasks. Second, Graybeal argues that the ALJ failed to evaluate whether her diarrhea and urinary incontinence were severe impairments in step two and also failed to include limitations caused by those impairments in her RFC. Third, Graybeal argues that the ALJ improperly rejected the lay witness testimony of her friend and roommate Mary Wehling. Finally, Graybeal argues that the ALJ failed to adhere to the heightened obligation to fully and fairly develop the record imposed because Graybeal appeared unrepresented and suffered a severe mental impairment.

## I.    Dr. Daniel's Opinion and the RFC Determination

An ALJ may reject an uncontradicted opinion of a treating or examining doctor only based on clear and convincing reasons supported by substantial evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (citing *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995)). If the treating or examining doctor's opinion is contradicted, however, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence. *Id.*

In November 2007, before Graybeal moved from Georgia to Oregon, she was evaluated by Theodore Daniel, Psy.D. Tr. 320 - 323. Dr. Daniel conducted a clinical interview and several

psychological assessments, including the Bender-Gestalt Test, Wide Range Achievement Test,

and the Wechsler Adult Intelligence Scale. Tr. 320-321. Dr. Daniel diagnosed Graybeal with

generalized anxiety disorder, depressive disorder, NOS, and borderline intellectual functioning.

Tr. 323. He summarized Graybeal's cognitive limitations as follows:

> She is functioning in the Borderline range of intelligence with no significant impairment
> in visual-motor functioning. Her academic achievement in Reading and Arithmetic fell
> in the low average and borderline range. Moreover, there was no evidence for the
> presence of a thought disorder. Rather, the major findings were consistent with an anxiety
> and mood disorder.
>
> In my opinion, her ability to understand and to carry out simple instructions is fair. Her
> ability to cooperate with others is fair. Her ability to focus attention in order to complete
> assigned tasks in a competitive work environment is impaired.
> ...

Tr. 322-323.

In his decision, the ALJ discussed Dr. Daniel's evaluation at some length and observed

that "Dr. Daniel's opinion that the claimant is limited to simple tasks is incorporated into the

residual functional capacity determination." Tr. 13. The ALJ, however, did not indicate what

degree of weight he afforded Dr. Daniel's opinion as a whole and did not indicate whether the

RFC also incorporated other aspects of Dr. Daniel's opinion. *Id.* Moreover, the ALJ's decision

explicitly failed to refer to any opinions of other psychologists or mental health providers,

including the non-examining state agency consultant, William Gore, Ph.D. Dr. Gore opined that

Graybeal had moderate limitations in her ability to understand, remember, and carry out detailed

instructions, maintain attention and concentration for extended periods, work in coordination

with or proximity to others without being distracted, interact appropriately with the general

public, and accept and respond appropriately to instructions and criticisms from supervisors.[1]  Tr. 380-381.  Interestingly, the ALJ reiterated several of those opinions without attributing them to Dr. Gore, finding in his decision that Graybeal is "moderately limited in her ability to concentrate and to interact with others . . . ."  Tr. 11.

Graybeal now argues that because the ALJ incorporated only Dr. Daniel's opinion concerning her limitation to simple tasks, he implicitly rejected all of Dr. Daniel's other opinions, including that Graybeal was impaired in her abilities to focus attention, complete assigned tasks, and work in an competitive environment.  The Commissioner, by contrast, contends that the ALJ did not improperly reject those aspects of Dr. Daniel's evaluation, but rather incorporated them into the RFC.

As an initial matter, I find that the ALJ did actually credit Dr. Daniel's opinions concerning Graybeal's limitations on focus, task completion, and adaptation to a competitive work environment, although not explicitly.  In the section of the ALJ's decision discussing whether Graybeal's impairments met or equaled one of the listed impairments, the ALJ

---

[1] In a functional capacity assessment, Dr. Gore also opined:

1. Claimant can follow rules and remember simple 1 or 2 step instructions, but not detailed or complex [instructions].
2. Claimant can attend to simple, repetitive tasks for two hour blocks of time 40 hours per week without significant interference from psychiatric symptoms, can make simple work-related decisions and respond to minor changes in work routine with minimal supervision.
3. Claimant should not work with the public or in the stress of close coordination with others, but can work in the presence of others and accept supervision and feedback regarding performance within a simple routine.
4. Claimant can make simple plans, set simple goals, and avoid common workplace hazards.  Can use public transportation, and maintain appropriate appearance and hygiene.

Tr. 382.

acknowledged that Graybeal is "moderately limited in her ability to concentrate . . . ." Tr. 11.

Because this finding adequately summarizes Dr. Daniel's observation that Graybeal's "ability to

focus attention in order to complete assigned tasks in a competitive work environment is

impaired," I must conclude that the ALJ credited, rather than rejected, Dr. Daniel's assessment.

Tr. 323.

      Even though the ALJ technically credited Dr. Daniel's opinion concerning Graybeal's

concentration deficits, he erred by failing to incorporate it as a limitation in Graybeal's RFC. An

ALJ's RFC assessment of a claimant adequately captures restrictions related to concentration,

persistence, or pace where the assessment is "consistent with restrictions identified in the medical

testimony." *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008) (citing *Howard v.*

*Massanari*, 255 F.3d 577, 582 (8th Cir. 2001); *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir.

2001)). For example, in *Stubbs-Danielson*, the Ninth Circuit held that an RFC of "simple,

routine, repetitive" work was consistent with an examining doctor's opinion that claimant can

carry out "very short simple instructions," "maintain attention and concentration for extended

periods," and "sustain an ordinary routine without special supervision." *Id.*

      However, where medical testimony identifies more significant restrictions related to

concentration, persistence or pace, an ALJ errs by formulating an RFC limiting claimant only to

simple, repetitive work. *See Brink v. Comm'r Soc. Sec. Admin*, 343 Fed. Appx. 211, 212 (9th

Cir. 2009) (RFC of simple, repetitive work does not encompass "moderate difficulty with

concentration, persistence, or pace"); *Lim v. Astrue*, 2011 WL 3813100, at *7 (E.D. Cal. Aug. 29,

2011) (limitation on sustained concentration for only two-thirds of a workday not adequately

expressed as RFC for simple routine jobs); *Bentancourt v. Astrue*, 2010 WL 4916604, at *3

(C.D. Cal. Nov. 27, 2010) (RFC of simple, repetitive work does not include examining psychologist's opinion that plaintiff had moderate impairment in concentration, persistence and pace such that she had "some difficulty both establishing and maintaining focus"); *Bickford v. Astrue*, 2010 WL 4220531, at \*12 (D.Or. Oct.19, 2010) (RFC of simple, repetitive tasks does not adequately account for ALJ's finding that plaintiff has moderate difficulties in concentration); *Melton v. Astrue*, 2010 WL 3853195, at \*8 (D.Or. Sept. 28, 2010) (ALJ's finding that plaintiff has "mild-to-moderate" difficulties in maintaining concentration, persistence or pace not expressed in RFC limitation to simple, repetitive tasks); *but see Dupree v. Astrue*, 2011 WL 651886, at \*5 (C.D. Cal. Feb. 10, 2011); *Thrash v. Astrue*, 2010 WL 3775063, at \*6 (D. Ariz. Sept. 21, 2010). Therefore, a reviewing court must carefully examine the medical evidence in the record to determine whether an RFC of simple, repetitive work adequately captures the plaintiff's limitations in concentration, persistence, or pace. *See Gillock v. Astrue*, 2011 WL 4916499, at \*6 (D. Or. June 29, 2011) ("The adequacy of the limitations imposed turns on whether the ALJ's assessment is 'consistent with the restrictions identified' in the medical record.")

A good illustration of this principle is the decision in *Koch v. Astrue*, 2009 WL 1743680 (D. Or. June 15, 2009). There, the court found that an RFC limiting plaintiff to simple, routine tasks was consistent with testimony of the nonexamining state medical consultant that plaintiff had a moderate limitation in concentration, persistence or pace. *Id.* at \*15 n.9 (D. Or. June 15, 2009). Because the medical evidence showed plaintiff only had a problem with understanding complex instructions, not with pace, the court found that the RFC requiring simple instructions adequately expressed his cognitive limitation. *Id.*

This case is different. Here, as described previously, Dr. Daniel specifically identified Graybeal's limitation in sustaining the ongoing attention necessary to complete tasks in a competitive workplace. And the ALJ recognized that restriction through his finding that Graybeal was moderately limited in her ability to concentrate. Moreover, Dr. Daniel found that Graybeal's ability to understand instructions was "fair," not "impaired." Tr. 323. Thus, unlike the plaintiff in *Koch*, the medical record shows that Graybeal's deficit in concentration affects her ability to complete tasks in the workplace, rather than her ability to comprehend instructions.

Consistent with this case-by-case approach, the courts recognize that for plaintiffs who have difficulty *maintaining* focus for extended periods, an RFC of simple, repetitive work does not adequately capture a psychologist's opinion that the plaintiff suffers a moderate limitation in concentration, persistence, or pace. For example, in *Brink*, an unpublished Ninth Circuit decision, the court rejected the Commissioner's contention that the phrase "simple, repetitive work" adequately encompassed difficulties with concentration, persistence, or pace in part because "repetitive, assembly-line work of the type described by the [vocational] expert might well require extensive focus or speed." 343 F. App'x 211, 212 (9th Cir. 2009). Similarly, courts recognize that limitations in a claimant's ability to sustain concentration on even simple tasks should be included in a claimant's RFC. *See Lim*, 2011 WL 3813100, at *7 ("[The examing psychologist's] assessment distinguishes between [plaintiff's] ability to perform simple versus complex tasks and her ability to sustain concentration *regardless of the complexity*, and it is the latter limitation that was never addressed in the ALJ's decision.") (emphasis in original). In other words, a plaintiff's moderate limitations in concentration, persistence, or pace may manifest as an inability to sustain long-term focus on even a simple, repetitive task such as assembly-line

production.

Here, the VE identified the small products assembler occupation as one of the positions that could be performed by someone limited to simple, repetitive work. That selection only reinforces my concern with the deficiency of Graybeal's RFC. As the Ninth Circuit recognized in *Brink*, Graybeal's moderate limitation in concentration might preclude her from performing even repetitive assembly-line work. Yet the ALJ did not include that limitation in Graybeal's RFC and thus did not afford the VE the opportunity to address it in his testimony.

Since Graybeal's RFC "fails to take into account" her limitations, the VE hypothetical derived from it is defective. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009); *Andrews v. Shalala*, 53 F.3d 1035, 1044 (9th Cir. 1995) (ALJ's hypothetical to VE that does not "consider all of the claimant's limitations" is incomplete). Consequently, the VE's conclusions that Graybeal is capable of her past relevant work as a meat packager and of performing other occupations, such as a housekeeper, janitor, or small products assembler has no evidentiary value. *See Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 886 (9th Cir. 2006) (hypothetical to a VE based on an incomplete set of limitations is legally inadequate). The Commissioner therefore failed to carry his burden at step five to show that plaintiff can engage in work in the national economy. *Andrews*, 53 F.3d at 1044.

## II.    Diarrhea and Urinary Incontinence

In briefing, Graybeal seems to conflate these two conditions, referring interchangeably to aspects of the medical record discussing diarrhea and stress urinary incontinence. I analyze them separately, however, and find that the ALJ erred by finding diarrhea was not a severe impairment or– at least one of a severe combination of impairments– and by omitting diarrhea-related

limitations from Graybeal's RFC. By contrast, the ALJ properly found stress urinary

incontinence to be non-severe and disregarded it when formulating Graybeal's RFC.

### A. Severity

At the second step in the sequential analysis, the ALJ considers the medical severity of

the claimant's impairments. *See Bowen*, 482 U.S. at 140-141; *see also* 20 C.F.R. §§

404.1520(a)(4)(ii).  An impairment is "severe" if it significantly limits the claimant's ability to

perform basic work activities and is expected to persist for a period of twelve months or longer.

*See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 404.1520(c).  The ability to perform basic

work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§

404.1521(b); *see also Bowen*, 482 U.S. at 141.  An ALJ can find an impairment "not severe only

if the evidence establishes a slight abnormality that has no more than a minimal effect on an

individual's ability to work." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citations

omitted).

Before an ALJ can conclude that a claimant's symptoms affect the claimant's ability to

work, "medical signs or laboratory findings . . . must show the existence of a medical

impairment." 20 C.F.R. § 404.1529(b); *see also Ukolov v. Barnhart,* 420 F.3d 1002, 1004 (9th

Cir. 2005).  "[U]nder no circumstances may the existence of an impairment be established on the

basis of symptoms alone."  S.S.R. 96-4, 1996 SSR LEXIS 11, at *3 (July 2, 1996); *see also* 20

C.F.R. § 404.1508.   An ALJ's erroneous finding that an impairment is non-severe constitutes

harmless error, however, if the ALJ resolves step two in the claimant's favor and properly

considers limitations imposed by the impairment at other steps of the sequential process. *Lewis*

*v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (ALJ's failure to discuss the claimant's impairment

in the severity determination was harmless where the ALJ considered any limitations posed by the impairment in the analysis of whether the claimant could perform past relevant work).

Here, stress urinary incontinence does not qualify as a severe impairment. Graybeal was first diagnosed with stress urinary incontinence in March 2005, along with uterine fibroids and excessive uterine bleeding, when she visiting the hospital with a complaint of pelvic pain and vaginal bleeding. Tr. 214. During that hospitalization Graybeal underwent a hysterectomy. Tr. 223-224. There is no evidence that Graybeal had further trouble with urinary incontinence until February 2010, when she complained of urinary frequency and urgency. Tr. 414-415. Graybeal's nurse practitioner discussed treatment options and urged her to return to the clinic if her symptoms worsened. Tr. 415. Even if Graybeal's urinary incontinence qualifies as a medical impairment, the ALJ did not err in finding it non-severe because Graybeal never alleged that her urinary incontinence interfered with her ability to perform basic work activities.

Rather, Graybeal complained that diarrhea – not urinary incontinence– impacted her ability to maintain employment. Tr. 46, 125, 171, 361-362. She testified, for example, that she had been fired from every job she ever had due to missing work because of diarrhea. Tr. 46. Graybeal intermittently reported diarrhea symptoms to medical providers, evaluators, and on disability-related paperwork starting as early as January 2005. Tr. 125, 128, 171, 198, 204, 212, 229, 256, 273, 287, 295, 320, 362, 417. Finally, Graybeal testified that "nerves" and stress were the causes of her diarrhea, Tr. 46-47, and a physician who evaluated Graybeal noted she suffered from stress related diarrhea. Tr. 362. Although there are no medical signs or laboratory findings indicating the existence of diarrhea as separate medically determinable impairment, the ALJ found Graybeal's generalized anxiety disorder to be a severe impairment, which is arguably

connected to her diarrhea. Tr. 10.

The severity standard has been described as "a de minimis screening device to dispose of groundless claims" and the Ninth Circuit requires the ALJ to consider "the combined effect of all of the claimant's impairments on her ability to function, without regard to whether each alone was sufficiently severe." *Edlund v. Massanari*, 253 F.3d 1152, 1158 (9th Cir. 2001) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996)). Accordingly, I find that Graybeal's anxiety disorder in conjunction with her allegedly stress-induced diarrhea symptoms has more than a minimal effect on Graybeal's ability to work. The ALJ therefore erred in excluding diarrhea from Graybeal's severe combination of impairments. *See Smolen*, 80 F.3d at 1290 ("an impairment or combination of impairments can be found not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individuals ability to work.") (internal quotations omitted).

**B. RFC**

The RFC assessment describes the work-related activities a claimant can still do on a sustained, regular and continuing basis, despite the functional limitations imposed by her impairments. 20 C.F.R. § 404.1545(e); S.S.R. No. 96-8p, 1996 SSR LEXIS 5, at *5 (July 2, 1996). The ALJ must reach the RFC assessment based on all the relevant evidence in the case record including medical records, lay evidence, and the effects of symptoms that are reasonably attributed to a medically determinable impairment. *Robbins,* 466 F.3d at 883; SSR 96-8p, 1996 SSR LEXIS 5, at *14. "SSR 96-8p directs that '[c]areful consideration' be given to any evidence about symptoms 'because subjective descriptions may indicate more severe limitations or restrictions than can be shown by medical evidence alone.'" *Id.* (quoting S.S.R. 96-8p, 1996 WL

Page 13- FINDINGS AND RECOMMENDATION

374184, at *5). In sum, "if the record establishes the existence of a medically determinable impairment that could reasonably give rise to the reported symptoms, an ALJ must make a finding as to the credibility of the claimant's statements about the symptoms and their functional effect." *Id.* (citing S.S.R. 96-7p, 1996 WL 374186, at *1 (July 2, 1996)). The ALJ, however, need not incorporate limitations identified through testimony that the ALJ permissibly discounted. *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004).

Unless the record has affirmative evidence of malingering, the ALJ may reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008). The ALJ must state specifically the facts in the record that lead to her conclusion. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). In other words, the ALJ's credibility findings must be sufficiently specific to "permit the court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Tommasetti*, 533 F.3d at 1039 (citation omitted).

Here, I find that the ALJ erred because he failed to incorporate limitations associated with Graybeal's diarrhea into her RFC. Although the record does not contain many specific descriptions of Graybeal's diarrhea symptoms, it does suggest that diarrhea imposed some functional limitations in her life. Graybeal testified that she had been fired from every job she had "due to the fact that I have diarrhea and I miss work." Tr. 46. She explained that "I could go into a store and I end up having to go to the bathroom and a couple of times I haven't made it out of the store." *Id.* Graybeal also wrote in a disability report that "[w]hen I have diarrhea its difficult to work." Tr. 125. In a function report, Graybeal explained that "I have problems with

Page 14- FINDINGS AND RECOMMENDATION

diarrea [sic] can't make it to the bathroom- been fired from several jobs because I can't make it to work." Tr. 171.

Moreover, there is some evidence linking Graybeal's diarrhea to a medically determinable impairment. In his decision, the ALJ already found that Graybeal's generalized anxiety disorder was a severe, medically determinable impairment. Tr. 10. Further, Graybeal testified that she was told that her diarrhea was caused by "nerves" and was recommended to take immodium to alleviate it.[1] Tr. 46-47. Although Graybeal did not testify which medical provider offer this explanation– and the ALJ did not inquire– other statements suggest that Graybeal sought treatment in Georgia for this problem. Tr. 128 (Graybeal's initial adult disability report listing Medical College of Georgia as provider of treatment for diarrhea); Tr. 198 (Graybeal's appeal adult disability report stating that the Medical College of Georgia prescribed anti-diarrhea tablets because she suffered diarrhea at least five times per day). Indeed, between 2005 and 2007, Graybeal reported suffering from diarrhea a number of times during medical visits, including several at the Medical College of Georgia. Tr. 212; 229; 254; 273; 287. In fact, during a March 2007 emergency department visit, a medical provider included "+ diarrhea" in the "Medical Assessment" and noted that Graybeal's "Prior Treatment" included anti-diarrheal pills. Tr. 256. Graybeal was prescribed a "GI cocktail", Tr. 257, and upon discharge, the treating doctor wrote that "diarrhea is present but there is nothing new about that," indicating Graybeal had long-standing problems with diarrhea. Tr. 252. Finally, and most significantly, a physician who evaluated Graybeal for disability in Georgia in July 2008 noted in a "Review of Systems"

---

[1] Graybeal also agreed with the ALJ's summary that "they tell you that maybe that problem's caused by stress" and "they haven't come up with a medical reason yet[.]" Tr. 47.

Page 15- FINDINGS AND RECOMMENDATION

under "GI/ABDOMEN" that Graybeal was "+ FOR > stress related diarrhea."[2] Tr. 362.  Thus,

based on Graybeal's testimony and the medical record, I find that Graybeal's medically

determinable impairment of anxiety disorder could reasonably give rise to her reported diarrhea

symptoms.

Additionally, the record lacks evidence that Graybeal is malingering.  Therefore, the ALJ

had a duty to make a credibility determination about Graybeal's reported diarrhea symptoms and

their functional effects.  *See Robbins*, 466 F.3d at 883.

Despite this obligation, the ALJ made no such credibility determination.  In his decision,

the ALJ acknowledged Graybeal's testimony that she suffered diarrhea due to nerves, among

other symptoms such as headaches, neck pain, and frequent falls.  Tr. 12.  The ALJ then

analyzed the credibility of Graybeal's testimony concerning headaches, neck pain, depression,

and anxiety, but failed to address her testimony regarding diarrhea.  Tr. 12.  Rather, the ALJ only

concluded generally that her "statements concerning the intensity, persistence, and limiting effect

of these symptoms are not credible to the extent they are inconsistent with the above residual

functional capacity."  Tr. 12.  Since the ALJ failed to offer clear and convincing reasons for

rejecting Graybeal's testimony concerning the severity of her diarrhea symptoms, he improperly

rejected that testimony.  Consequently, the ALJ's decision to omit any diarrhea-related

limitations from Graybeal's RFC was not supported by substantial evidence.

By contrast, the ALJ did not err by omitting limitations concerning Graybeal's urinary

---

[2] It is unclear whether that notation derived from Graybeal's subjective report, a review of
medical records, or physical examination.

Page 16- FINDINGS AND RECOMMENDATION

incontinence from her RFC. Social Security Ruling 96-8p provides that an RFC assessment will only consider "functional limitations and restrictions" resulting from an individual's medically determinable impairment or combination of impairments. S.S.R. 96-8p, 1996 WL 374184, at *1 (July 2, 1996). When a claimant does not allege any limitation or restriction of a "specific functional capacity, and no information in the case record that there is such a limitation or restriction, the adjudicator must consider the individual to have no limitation or restriction with respect to that functional capacity." *Id.* Because Graybeal alleged no functional limitation or restricting resulting from her urinary incontinence, and I find nothing in the record supporting such a limitation, the ALJ could not have included any urinary incontinence-related limitation into Graybeal's RFC.

### III.    Mary Wehling's Lay Testimony

"[L]ay witness testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence." *Van Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). Thus, "an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout* , 454 F.3d at 1053. The ALJ cannot disregard lay witness testimony "without comment." *Van Nguyen*, 100 F.3d at 1467. Rather, if an ALJ disregards the testimony of a lay witness, the ALJ must provide specific reasons that are germane to each witness. *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009). The ALJ can reject lay witness testimony to the extent that it conflicts with other testimony, the record of the claimant's activity or the medical evidence. *Bayliss*, 427 F.3d at 1218; *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001). Moreover, evidence from lay witnesses "must be complete and detailed enough" to allow the ALJ

to determine the nature, severity and duration of the impairment and the claimant's "residual

functional capacity to do work-related physical and mental activities." 20 C.F.R. § 404.1513(e).

Mary Wehling testified that Graybeal was her friend and had been living with her "on

and off" for about two to three years. Tr. 48. Wehling testified about Graybeal's general

condition as follows: "She's not very mobile. She doesn't do a lot of walking. What is it that

you have, deterioration of her muscles or her joints, early stuff. So she's pretty sore. So I'm

here. I'm taking care of her." Tr. 50. Wehling also testified that Graybeal has "bowel issues"

and is "always having to go to the bathroom" and "always buying tools for that." *Id.*

Additionally, Wehling reported that Graybeal was "clumsy" and would "run[] into walls . . . ."

*Id.*

The ALJ gave "limited evidentiary weight" to Wehling's testimony for two reasons.

First, the ALJ found her testimony to be "brief and vague . . . ." Tr. 12. Second, the ALJ noted

an inconsistency between Wehling's description of Graybeal's limitations and Graybeal's ability

to care for children. *Id.* Neither rationale is adequate to support the ALJ's decision to discredit

Wehling's testimony.

I do not accept the ALJ's suggestion that Wehling's testimony was too brief and vague to

be reliable. The ALJ has a duty to fully and fairly develop the record in Social Security cases.

*Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001). The ALJ's responsibility is

heightened in this particular case because Graybeal appeared unrepresented and suffers a severe

mental impairment. *See Celaya v. Halter*, 332 F.3d 1177, 1183 (9th Cir. 2003); *Higbee v.*

*Sullivan*, 975 F.2d 558, 561 (9th Cir. 1992); *Thompson v. Sullivan*, 933 F.2d 581, 586 (7th Cir.

1991) ("When a claimant is both unrepresented and suffers from a mental impairment ... the

ALJ's duty to carefully develop the record is even greater."). Mary Wehling explained her participation in the hearing as being "here to answer any questions that you [the ALJ] have." Tr. 49. Yet the ALJ asked Welling very few questions– her testimony covers only two and half pages in the hearing transcript. Tr. 48-49. If the ALJ found Wehling's description of Graybeal's limitations to be incomplete, he could have asked her to expand on her testimony or could have posed specific questions to elicit more precise responses. Given the ALJ's intensified duty to develop the record in this case, he cannot rely on the lack of specificity of Wehling's testimony as a rationale for discrediting it.

The ALJ also improperly rejected Wehling's testimony based on the perceived conflict between her description of Graybeal's level of impairment and Graybeal's ability to care for children. The record provides only scant evidence concerning the extent of Graybeal's child care duties. In October 2007, Graybeal reported that she "change[s] pampers" and "fix[es] snacks" for her grandchildren. Tr. 145. In July 2008, Graybeal wrote that if her daughter is asleep, she "watches cartoons" with her grandchildren. At her hearing in April 2010, Graybeal testified that she babysits for Wehling's three children, ages five, six, and 11. Tr. 44. Nevertheless, Graybeal agreed, at the ALJ's prompting, that she does not have to "change diapers . . . or anything like that." Tr. 45. Nothing in Graybeal's description of her child care activities actually conflicts with Wehling's account of Graybeal's limitations. Graybeal could certainly watch cartoons, fix snacks, or even change diapers despite her limited mobility, bowel problems, and clumsiness. Thus, it appears that the ALJ stretches to manufacture a conflict between Graybeal's daily activities and Wehling's testimony where none exists. Therefore, the ALJ's reason for rejecting

Wehling's testimony, although specific, cannot be considered "germane" to her testimony. *See*

*Bruce*, 557 F.3d at 1115.

## IV.  Remedy

A district court should credit evidence that was rejected during the administrative process

and remand for an immediate award of benefits if: "(1) the ALJ failed to provide legally

sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be

resolved before a determination of disability can be made; and (3) it is clear from the record that

the ALJ would be required to find the claimant disabled were such evidence credited." *Benecke*

*v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004) (citing *Harman v. Apfel*, 211 F.3d 1172, 1174,

1178 (9th Cir. 2000)).  Even if there is no vocational expert testimony stating that a person with

the claimant's precise limitations is disabled, remand is not always required. *Id.* at 595.  Rather,

"in the unusual case in which it is clear from the record that the claimant is unable to perform

gainful employment in the national economy, even though the vocational expert did not address

the precise work limitations established by the improperly discredited testimony, remand for an

immediate award of benefits is appropriate." *Id.*  Remand for further administrative proceedings

is appropriate, however, "if enhancement of the record would be useful." *Id.* at 539.

Graybeal argues that remand for an award of benefits is appropriate here because the

functional limitations described by Dr. Daniel and Graybeal's diarrhea-induced absenteeism

would preclude competitive employment.  I disagree.  As explained above, the ALJ did not reject

Dr. Daniel's opinion so much as fail to translate it into an RFC to be posed in the form of a

hypothetical to the vocational expert. *See Bentancourt*, 2010 WL 4916604, at *4 ("The ALJ

accepted the evidence of Plaintiff's limitations, but failed to include them in the hypothetical

question posed to the vocational expert."). Moreover, although the ALJ improperly disregarded Graybeal's complaints of diarrhea and Mary Wehling's lay testimony, even crediting that testimony would not require a finding of disability. Graybeal spoke only generally about her past difficulty with absences caused by diarrhea and gave no further detail about the current nature of her diarrhea symptoms and how they limit her functional capacity. Thus, three outstanding issues must be resolved before the disability determination can be completed. First, the ALJ must augment Graybeal's RFC with her concentration limitation. Second, the ALJ must explore the extent of Graybeal's diarrhea symptoms and factor them into her RFC as well. Finally, the ALJ determine whether Graybeal can still perform past relevant work or other work existing in the national economy in light of that RFC.

Graybeal insists that even if this case is remanded for further proceedings, the court should order the ALJ to credit any improperly rejected evidence as true. A reviewing court may require an ALJ to credit a claimant's improperly rejected symptom testimony as true even where remand is necessary to determine disability. *See Vasquez v. Astrue*, 572 F.3d 586, 594 (9th Cir. 2009). Nevertheless, courts have "some flexibility" in how they apply the credit as true rule. *Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003). The Ninth Circuit has recently concluded that "applying the [credit-as-true] rule is not mandatory when, even if the evidence at issue is credited, there are 'outstanding issues that must be resolved before a proper disability determination can be made.'" *Luna v. Astrue*, 623 F.2d 1032, 1035 (9th Cir. 2010) (quoting *Vasquez*, 572 F.3d at 593). Perhaps because the plaintiff was unrepresented before the ALJ, the hearing testimony from both plaintiff and Wehling did not contain much detail concerning Graybeal's diarrhea, the very impairment that Graybeal alleged prevented her from working in

the past.  Therefore, I recommend exercising the court's discretion not to credit as true Graybeal's existing symptom testimony and Mary Wehling's existing lay testimony.  Instead, on remand the ALJ should solicit any additional testimony necessary to ascertain the nature, severity and duration of the Graybeal's diarrhea symptoms, one of the key outstanding issues in this case.

### CONCLUSION

For the reasons set forth above, the Commissioner's final decision should be reversed and remanded for further proceedings.  A final judgment should be entered pursuant to sentence four of 42 U.S.C. § 405(g).

### SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge.  Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation.  If no objections are filed, then the Findings and Recommendation will go under advisement on that date.  If objections are filed, then a response is due fourteen (14) days after being served with a copy of the objections.  When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

IT IS SO ORDERED.

Dated this 1ST day of November, 2011 .

Honorable Paul Papak
United States Magistrate Judge